UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LARRY LEWIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-0537** |
| **BOBBY JINDAL, GOVERNOR OF STATE, JAMES LEBLANC, SECRETARY OF CORRECTIONS, ROBERT TANNER, CCE, WARDEN** | **SECTION "C" (4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of in part without an evidentiary hearing.

**I.     Factual and Procedural Background**

The plaintiff, Larry Lewis ("Lewis"), is an inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana. Lewis filed *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Governor Bobby Jindal, James LeBlanc, Secretary of the Louisiana Department of Corrections ("DOC"), and RCC Warden Robert Tanner, CCE, each in their official and individual capacities, seeking monetary and prospective injunctive relief arising from the DOC requirement that he serve his current sentence as a habitual offender at hard labor.[1]

---

[1] The instant lawsuit is one of nine virtually identical civil actions simultaneously filed by different prisoners at RCC. The other cases are: *Talama Lewis v. Bobby Jindal*, Civ. Action No. 14-538"C"(1); *Lawrence Marrero v. Bobby Jindal*, Civ. Action No. 14-539"I"(5); *Ronald Marshall v. Bobby Jindal*, Civ. Action No. 14-540"E"(5); *Joseph I. Smith v. Bobby Jindal*, Civ. Action No. 14-541"S"(3); *Mark Q. Taylor v. Bobby Jindal*, Civ. Action No. 14-542"B"(4); *Earl Brown v. Bobby Jindal*, Civ. Action No. 14-553"F"(3); *Edward Cager v. Bobby Jindal*, 14-554"G"(3); and *Benyale Davis v. Bobby Jindal*, Civ. Action No. 14-555"I"(5).

Affording the complaint a broad reading,[2] Lewis alleges that he was convicted in 2007 of possession with intent to distribute cocaine and as a felon in possession of a weapon. He was sentenced as a multiple offender under La. Rev. Stat. Ann. § 15:529.1 to a term of fifteen years imprisonment.

Lewis alleges that § 15:529.1 did not address imprisonment "at hard labor" for multiple offenders until it was amended in 2010, several years after he was sentenced. He therefore argues that, by confining him at hard labor at the RCC, a state prison operated by the DOC, the defendants have subjected him to "involuntary servitude" in violation of the Thirteenth Amendment to the United States Constitution and have deprived him of a "state-created liberty interest" he held through his imprisonment without hard labor. He additionally argues that the defendants' actions in retroactively applying the 2010 amendments to § 15:529.1 violated the federal *Ex Post Facto* Clause.

## II.   Standard of Review for Frivolousness

Titles 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

---

[2]The court must liberally construe a *pro se* civil rights complaint. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.    Analysis

Lewis seeks both monetary and injunctive relief against the defendants in their official and individual capacities to redress his § 1983 claims related to the manner in which he is required to serve his sentence at hard labor claiming that it amounts to a violation of his substantive due process rights under the Fourteenth Amendment, involuntary servitude under the Thirteenth Amendment and a violation of the *Ex Post Facto* Clause. His claims, however, are frivolous for the following reasons.

#### A.    Claims for Monetary Damages against the Defendants in their Official Capacity and Eleventh Amendment Immunity

Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983. A plaintiff must prove both the constitutional violation and that the action was taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). However, a state actor in his official capacity is not considered to be a person for purposes of suit

under § 1983. *Will v. Michigan Dept. of St. Police*, 491 U.S. 58 (1989); *Stotter v. Univ. of Tex.*, 508 F.3d 812, 821 (5th Cir. 2007). In keeping with its long-standing doctrine, the Supreme Court has held that, when a state actor is sued in his official capacity, the action is considered to be one taken against the State or the department he represents. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

The Eleventh Amendment, however, forbids federal courts from entertaining a suit brought by a citizen against his own State. *Pennhurst State School v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F .2d 183, 185-86 (5th Cir.1986). A state may expressly waive this Eleventh Amendment sovereign immunity. See *Edelman v. Jordan,* 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dept. of Highways,* 780 F.2d 1268, 1271-73 (5th Cir.1986). However, the State of Louisiana has not done so. To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

As a general rule, suit against the State, the DOC, and its employees in their official capacities implicates the Eleventh Amendment immunity doctrine. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir. 1999); *Lockett v. New Orleans City*, 639 F. Supp.2d 710 (E.D. La. 2009); *Muhammad v. Louisiana*, No. 99-2694 c/w 99-3742, 2000 WL 1568210 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Corr. Center*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson v. Phelps*, 655 F. Supp. 560, 560 (M.D. La. 1985) and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)); *Wallace v. Edwards*, 30 F.3d 1493, 1994 WL 399144, at *1 (5th Cir. Jul. 21, 1994) (addressing the governor). In this

case, Governor Jindal is the executive officer of the State of Louisiana and the other defendants are employed by the Louisiana Department of Public Safety and Corrections ("DOC"), which under La. Rev. Stat. Ann. § 36:401 is a department within the Louisiana state government.  For Eleventh Amendment purposes, the executive officer and the DOC are considered arms of the State of Louisiana since any money judgment against these entities necessarily would be paid from state funds.  *See Edelman*, 415 U.S. at 663 (suit against a state governor in their official capacity is a suit against the sovereign.); *Anderson*, 655 F. Supp. at 564 (DOC is an arm of the State).  The Court, therefore, is without jurisdiction to hear the plaintiff's claims against the State of Louisiana, the DOC, or the named defendants in their official capacities.  *See Warnock v. Pecos County, Tx.*, 88 F.3d 341, 343 (5th Cir. 1996).

The Supreme Court recognizes an exception to this doctrine where the Eleventh Amendment does not protect a state official from claims for prospective injunctive relief, like those sought by Lewis, when it is alleged that the state officials are acting in violation of federal law.  *Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Edelman*, 415 U.S. at 664; *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988).  Thus, while declaratory and prospective injunctive relief can not be pursued against the State in federal court, it can be pursued against a state official sued in his official capacity.  To meet this exception in its application to a § 1983 suit, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect.  *See Saltz v. Tenn. Dept. of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992).

Lewis has alleged that he is entitled to prospective injunctive relief requiring the Court to consider whether he has met the initial burden of overcoming the Eleventh Amendment immunity

bar under *Ex Parte Young* to bring this action against the named defendants in their official capacities. However, for the reasons that follow in the next section of this Report, Lewis has failed to present a cognizable constitutional claim arising from the enforcement of sentence at hard labor. For that reason, his claims seeking injunctive relief against the defendants in their official capacities fail to meet the *Ex Parte Young* exception. His claims for monetary relief and injunctive relief against the defendants in their official capacities must be dismissed as frivolous for lack of jurisdiction, for failure to state a claim for which relief can be granted, and/or for seeking monetary relief against immune defendants in accordance with 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

### B.    Claims Against Defendants in their Individual Capacities and for Prospective Injunctive Relief against their Official Capacities

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted,* shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1 (emphasis added). The Thirteenth Amendment itself therefore does prohibit the State from requiring a convicted prisoner to work, with or without pay, even when his sentence was not imposed at hard labor. *See*, *e.g.*, *Villarreal v. Morales*, 370 F. App'x 542, 543 (5th Cir. 2010) ("The Thirteenth Amendment . . . excepts, from the general prohibition, compelled labor as punishment for a crime. That exception applies even where the inmate . . . is not sentenced specifically to labor." (citation omitted)); *Smith v. Dretke*, 157 F. App'x 747, 748 (5th Cir. 2005) ("The Thirteenth Amendment permits involuntary servitude without pay as punishment after conviction of an offense, even when the prisoner is not explicitly sentenced to hard labor."); *Walton v. Tex. Dep't of Crim. Just., Inst'l Div.*, 146 F. App'x 717, 718 (5th Cir. 2005) ("Compelling an inmate to work without pay does not

violate the Constitution even if the inmate is not specifically sentenced to hard labor."); *Ali v. Johnson*, 259 F.3d 317 (5th Cir. 2001) ("[I]nmates sentenced to incarceration cannot state a viable Thirteenth Amendment claim if the prison system requires them to work.").

In this case, Lewis's claim that he had a "state-created liberty interest" to avoid hard labor fares no better. Such a claim was foreclosed by the Supreme Court's holding in *Sandin v. Conner*, 515 U.S. 472 (1995), where the United States Supreme Court held as follows:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483-84 (citations omitted).

Requiring a prisoner to work while incarcerated is not an atypical and significant hardship different from the ordinary incidents of prison life. *Gill v. Tex. Dep't of Crim. Just.*, No. 95-20723, 1996 WL 60544, at *2 (5th Cir. Jan. 23, 1996); *see also*, *Ibarra v. Fed. Bureau of Prisons*, Civ. Action No. 12-CV-139, 2013 WL 6065445, at *3 (N.D. Tex. Nov. 18, 2013) ("[W]ork is a typical condition of confinement."). In fact, the United States Fifth Circuit Court of Appeals has noted that, after *Sandin*, "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status" entitled to procedural due process protections. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added). Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time* rather than the *quality of time* served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added). Although requiring Lewis to work

while incarcerated may adversely affect the quality of his time in prison, it does not lengthen his sentence.

Finally, Lewis's *ex post facto* argument is also frivolous. As a initial matter, Lewis contends that Louisiana law did not allow for a habitual offender sentence to be imposed at hard labor prior to the 2010 amendment. His contention, however, is incorrect. The Louisiana First Circuit Court of Appeal rejected a similar argument, explaining the application of hard labor sentences to habitual offenders as follows:[3]

> [T]he defendant argues the trial court lacked authority to order that the life imprisonment sentence be served "at hard labor" when the provision which allows a sentence to be imposed at hard labor under the Habitual Offender Law was not enacted until 2010 by Act No. 69.
> Although the "at hard labor" language was, in fact, added to LSA-R.S. 15:529.1(G) by 2010 La. Acts, No. 69 § 1, the addition of that condition to the Habitual Offender Law did not modify the sentencing provisions of any underlying felony offense. The sentence conditions required by LSA-R.S. 15:529.1(G) are additions to, rather than replacements of, those conditions required by the sentencing provision for the underlying offense. A sentence enhanced under the Habitual Offender Law is computed by referring to the underlying offense. *See State v. Robinson*, 46,330 (La. App. 2d Cir. 2/18/11), 54 So.3d 1292.
> [. . .]
> Furthermore, we note that statutory enactments are generally classified as substantive, procedural, or interpretive. The Louisiana Supreme Court has stated:
>
>> Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones. Interpretive laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of laws.
>
> *State v. Washington*, 02-2196 (La. 9/13/02), 830 So.2d 288, 290 (per curiam).

---

[3]"[T]he construction of state laws is the exclusive responsibility of the state courts." *Speiser v. Randall*, 357 U.S. 513, 522 n.7 (1958); *see also*, *United States v. Escalante*, 239 F.3d 678, 680 n.6 (5th Cir. 2001) ("As state courts are the ultimate authority on issues of state law, federal courts are bound by their interpretations of state law.").

> In the instant case, we find that Act 69 is an interpretive enactment intended to clarify the purpose of the Habitual Offender Law. Clearly, the Habitual Offender Law was enacted with the intent to punish recidivism with hard labor sentences. This is evident by the fact that certain third and fourth felony habitual offender sentences restrict parole eligibility. The concept of parole is applicable only to hard labor sentences.

*State v. Douglas*, 72 So.3d 392, 398-99 (La. App. 1st Cir. 2011), *writs denied*, 90 So.3d 406 (La. 2012) and 115 So.3d 474 (La. 2013).

In this case, Lewis was convicted of possession with intent to distribute cocaine. At the time of his conviction, and now, the sentencing provision for that crime expressly provided for imprisonment at hard labor. La. Rev. Stat. Ann. § 40:967(B)(4)(b). Because the underlying offense allowed for a sentence at hard labor, that condition also was a legal component of Lewis's sentence as a habitual offender before and without regard to the 2010 amendment. *See Douglas*, 72 So.3d at 398.

Furthermore, there would be no *ex post facto* violation even if the 2010 amendment had effected a substantive change in state law. In *Magoon v. Tex. Dep't of Crim. Just.*, Nos. 99-40897, 99-41060, 2001 WL 43533, at *2 (5th Cir. Jan. 5, 2001), prisoners brought *ex post facto* claims arguing that they were disciplined for refusing to perform work based on a Texas law enacted after they were convicted. The United States Fifth Circuit Court of Appeals found that "their ex post facto claim *may* be meritorious" and therefore remanded the case for the lower court to "determine the viability of the ex post facto claim." *Id*. (emphasis added).

On remand, however, the federal district court determined that the *ex post facto* claims were precluded by federal law. *Magoon v. Cockrell*, Civ. Action No. 99-304, Report and Recommendation, Doc. 59 (S.D. Tex. Aug. 1, 2003) (unpub.) (Froeschner, M.J.) (adopted by Kent, J., Order, Doc. 63, Sept. 16, 2003). The district court relied on the Fifth Circuit's clarification of

the law in *Ali*, 259 F.3d at 317, issued subsequent to the remand in *Magoon*, 2001 WL 43533, at *1. In doing so, the District Court held that prison authorities always had authority to impose a work requirement under federal constitutional law, regardless of the precise terms of state law. *Magoon*, Civ. Action No. 99-304, Report and Recommendation, Doc. 59, p. 3; *Austin v. Cockrell*, No. 99-424, Report and Recommendation, Doc. 35, p. 3 (S.D. Tex. Aug. 1, 2003) (Froeschner, M.J.) (unpub.) (adopted by Kent, J., Doc. 36, Sept. 2, 2003).

The United States Fifth Circuit has since expressly rejected an *ex post facto* claim on a similar basis. *Villarreal*, 370 F. App'x at 544. In addressing Villarreal's *ex post facto* arguments, the Fifth Circuit held that "[a]lthough application to Villarreal of the law specifically permitting compulsory labor was retrospective treatment, it neither altered the definition of criminal conduct nor increased his punishment." That same analysis would apply in the instant case to Lewis. Although the Louisiana Habitual Offender Laws were amended or clarified in 2010, Lewis punishment was not increased nor was the definition of his criminal conduct altered in any way.

For the foregoing reasons, Lewis's claims against the defendants in their individual capacities are frivolous and otherwise fail to state a claim for which relief can be granted. The claims should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

### IV.     Lewis's "Motion for Certification of the Class" (Rec. Doc. No. 5)

Lewis also has filed a motion seeking to certify his case as a class action.[4] However, that motion is rendered moot by the recommendation that his entire case be dismissed for the foregoing reasons. In addition, the motion on its own should be denied because it is clear that *pro se* litigants,

---

[4]Rec. Doc. No. 5.

like Lewis, should not be allowed to serve as class representatives.  As the United States Tenth Circuit Court of Appeals has noted:

> Under Rule 23(a)(4) [of the Federal Rules of Civil Procedure], a class representative must "fairly and adequately protect the interests of the class."  A litigant may bring his own claims to federal court without counsel, but not the claims of others.  This is so because the competence of a layman is clearly too limited to allow him to risk the rights of others.

*Fymbo v. State Farm Fire & Casualty Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotation marks and citations omitted); *see also*, *Powers v. Clay*, No. V-11-051, 2011 WL 6130929, at *3 (S.D. Tex. Dec. 8, 2011); *Wetzel v. Strain*, No. 09-7633, 2009 WL 5064445, at *1 (E.D. La. Dec. 16, 2009); *Luna v. Kliebert*, Civ. Action No. 09-3853, 2009 WL 2175773, at *1 n.1 (E.D. La. Jul. 17, 2009), *aff'd*, 368 F. App'x 500 (5th Cir. 2010); *Sosa v. Strain*, No. 06-9040, 2007 WL 1521441, at *7 (E.D. La. May 22, 2007).

A *pro se* plaintiff's tenacity and zeal "are no substitute for the skill and experience which are needed to prosecute an action on behalf of a class."  *Mackenzie v. Local 624, Int'l Union of Operating Engrs.*, 472 F. Supp. 1025, 1033 (N.D. Miss. 1979); *see also*, *Luna*, 2009 WL 2175773, at *1 n.1; *Sosa*, 2007 WL 1521441, at *7.  For these reasons, Lewis's "Motion for Certification of the Class" should be denied.

### V.     Recommendation

It is therefore **RECOMMENDED** that Lewis's **Motion for Certification of the Class (Rec. Doc. No. 5)** be **DENIED** as moot and otherwise as meritless.

It is further **RECOMMENDED** that Lewis's § 1983 claims against the defendants, Governor Jindal, Secretary LeBlanc, and Warden Tanner, each in their official and individual capacities, be **DISMISSED WITH PREJUDICE** as frivolous, for failure to state a claim for which

11

relief can be granted, and/or for seeking monetary relief against immune defendants in accordance with 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this day of 17th of April, 2014.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[5] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.